UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

DANNIE RAY HAYWARD, SR.     CIVIL ACTION NO. 08-cv-1019

VERSUS     JUDGE HICKS

FORCHT WADE CORRECTIONAL     MAGISTRATE JUDGE HORNSBY
CENTER, ET AL

**REPORT AND RECOMMENDATION**

**Introduction**

Dannie Ray Hayward, Sr. ("Plaintiff") is an unrepresented prisoner who filed this civil rights action against several defendants. He complains about the medical care he received while he was housed for several months at the Forcht Wade Correctional Center. Plaintiff filed a Motion for Summary Judgment (Doc. 78) in which he asked for judgment because "the defendants have not met the burden of proof to disprove these allegations of true facts against them." Defendants filed opposition to the Plaintiff's motion, and they responded with their own Motion for Summary Judgment (Doc. 82) that urged dismissal because Plaintiff did not properly exhaust his administrative remedies before he filed suit. For the reasons that follow, it is recommended that Plaintiff's motion be denied and that Defendants' motion be granted.

**Analysis**

    **A. The Exhaustion Requirement**

Congress has commanded that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The statute's reference to actions "with respect to prison conditions" is interpreted broadly and includes those actions that allege the denial of proper medical care. Harris v. Hegmann, 198 F.3d 153 (5th Cir. 1999).

    **B. Summary Judgment Burdens**

Under Fed.R.Civ.P. 56(a), the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A fact is "material" if it might affect the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 106 S.Ct. 2505, 2510 (1986). A dispute is "genuine" if there is sufficient evidence so that a reasonable jury could return a verdict for either party. Anderson, supra; B & A Pipeline Co. v. Dorney, 904 F.2d 996, 1002 (5th Cir. 1990).

The party seeking summary judgment has the initial responsibility of informing the court of the basis for its motion, and identifying those parts of the record that it believes demonstrate the absence of genuine issue of material fact. Celotex Corp. v. Catrett, 106 S.Ct. 2548 (1986). If the moving party carries his initial burden, the burden then falls upon the

nonmoving party to demonstrate the existence of a genuine issue of a material fact. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 106 S.Ct. 1348, 1355-56 (1986).

**C. The Record**

Defendants have submitted evidence that the Louisiana Department of Public Safety and Corrections has adopted an Administrative Remedy Procedure ("ARP") for state prisons such as Forcht Wade. The procedure, published in the Louisiana Administrative Code at Title 22, Part I, Section 325, permits inmates to request administrative remedies regarding policies, conditions, or events within the prison. An inmate may commence the two-step process by writing a letter to the warden that briefly sets out the basis for the claim and the relief sought. An ARP screening officer will then send the inmate a notice advising that his request is being processed or has been rejected for procedural reasons.

If the grievance is accepted for processing, the warden (or an assigned staff member) will conduct fact finding and/or information-gathering and provide a response to the inmate within 40 days. An inmate who is dissatisfied with the first-step response has five days to appeal to the Secretary of the Department, who has 45 days to respond. If the inmate is not satisfied with the second-step response, he may file suit.

The failure to exhaust is an affirmative defense, and "inmates are not required to specially plead or demonstrate exhaustion in their complaints." Jones v. Bock, 127 S.Ct. 910 (2007). Plaintiff's judicial complaint was filed on a form that this court issued before the Jones decision. The form, as allowed by Fifth Circuit decisions before Jones, asked for information about administrative exhaustion. Even though the court no longer raises

exhaustion sua sponte or requires prisoners to prove exhaustion at the pleading stage, prisoners often use this old form, copies of which are still found in some jails and prisons, and provide information about their administrative efforts. If such allegations are included, they may not form the basis of a motion to dismiss but can alert the defendant to grounds for a motion for summary judgment. Carbe v. Lappin, 492 F.3d 325, 328 (5th Cir.2007); Fitch v. La. Department of Public Safety, 2009 WL 1076749, *2 (W.D. La. 2009). That is what happened here.

Plaintiff completed the administrative grievance information on his complaint form. He identified the underlying grievance as ARP No. 2008-150 FWADE. He stated that his first-step grievance was rejected and that his second step was "not answered - time expired." Available remedies are deemed exhausted when the time limits for the prison's response set forth in the grievance procedures have expired and officials have not acted. Underwood v. Wilson, 151 F.3d 292, 295 (5th Cir. 1999).

Defendants support their motion with an affidavit from Tracy DiBenedetto, who testified that she was employed as the Department's executive management officer in Baton Rouge, and her duties and responsibilities include receiving, processing, and responding to requests under the administrative remedy procedure. Ms. DiBenedetto testified that a database logs the receipt and disposition of ARP requests and reflects responses input at correctional facilities throughout the state and from headquarters. She testifies that she has reviewed the database regarding Case No. FWADE-2008-150 filed by Plaintiff. The database indicates that the grievance was received and rejected on May 22, 2008 on the

grounds that Plaintiff filed a grievance with "multiple issues." The Department's policy states that the ARP screening officer may reject a grievance, prior to its assignment to the first step, for a number of reasons such as duplication, requesting a remedy for another inmate, untimeliness, and when the "inmate has requested a remedy for more than one incident (a multiple complaint.)" Ms. DiBenedetto testifies that a prisoner whose grievance is so rejected may refile it (presumably after limiting it to one issue), and the grievance would be given a new ARP number. Plaintiff did not re-file his grievance. Defendants also offer a certified copy of a document that reflects no step-two complaint was filed.

The step-one grievance, filed on May 22, 2008, first sets forth "Complaint #1." The complaint regards a visit to see the prison physician on May 13 about problems Plaintiff had with his feet and legs, stemming primarily from his diabetes, high blood pressure, hepatitis, and other health problems. Plaintiff complained that head nurse Colt Palmer argued with Plaintiff about whether Plaintiff was entitled to visit an eye doctor, which turned into an argument between the two, followed by a direction that Plaintiff leave the area. Plaintiff complained generally of his healthcare and alleged that prison officials were acting in part based on retaliation and racism. Plaintiff listed under the heading "Complaint #2" a charge that diabetic prisoners at Forcht Wade were not getting proper meals because the prison served too many starches and no fresh fruit.

"Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules..." Woodford v. Ngo, 126 S.Ct. 2378, 2386 (2006). Once Plaintiff's grievance was rejected on the procedural grounds that it raised multiple issues, Plaintiff had

two possible ways of properly exhausting the claim presented in his suit. The first was to separate the multiple complaints in his grievance and re-file them individually. He had plenty of time to do so and remain timely under the allowed 90-days. Defendants offer evidence that Plaintiff did not file new and separate grievances, and Plaintiff does not contend otherwise, so that avenue is foreclosed.

The second possible means of exhausting was to file a step-two grievance. Defendants offer evidence that Plaintiff did not file a step-two grievance, but Plaintiff contests that assertion. The Department's policy is not clear as to whether a step-two grievance is a proper response when a first-step grievance is "rejected" for procedural reasons as opposed to denied on the merits.[1] It will be assumed for current purposes that properly pursuing a step-two grievance in this case would have properly exhausted the available remedies.

The Department's policy states that if an inmate is dissatisfied with the first-step response, he may appeal to the Secretary "by so indicating that he is not satisfied in the appropriate space on the response form and forwarding it to the ARP Screening Officer

---

[1] Plaintiff, as have other inmates, complains that the screening officers look for any excuse to reject a grievance rather than address it on the merits. There is no evidence of that in this case, but it is worth noting that the Supreme Court has said that the administrative exhaustion requirement gives the prison an opportunity to correct its own mistakes before it is called into federal court. The exhaustion requirement also promotes efficiency by allowing claims to be resolved more quickly and economically before the agency rather than in litigation in federal court. Woodford, 126 S.Ct. at 2385. If prison officials avoid the merits of the grievances by taking advantage of procedural requirements, they deprive themselves of those benefits.

within 5 days of receipt of the decision." The rejection form sent to Plaintiff did not have the "appropriate space" at the bottom of the form, as is seen with the form used for decisions on the merits.[2] The lack of the step-two space perhaps suggests that officials believe there is no appeal of a rejected grievance. In any event, Plaintiff had five days from receipt of the rejection to pursue step-two if it was available. (The Definitions section of the policy states that days means calendar days.) The records show that Plaintiff received his step-one rejection on May 22, 2008, making the second step due on May 27, 2008.

Defendants deny Plaintiff pursued a step-two appeal. Plaintiff submits an unsworn copy of a document he contends is a step-two grievance that was directed to the Secretary, with a copy sent to the Warden. The document is dated May 28, 2008, which would make it untimely. Even if that is overlooked and it is assumed the Secretary received the step-two grievance on the very day it was dated, the Secretary's response would not be due at the earliest until 45 days later on July 12, 2008. Plaintiff signed his judicial complaint and dated it July 10, 2008. Markings on the envelope he used to mail the complaint to the court indicate that it was delivered into the hands of prison officials for mailing perhaps on July 10 and, as evidenced by two ink-stamped dates, at least by July 11. The complaint was deemed filed when so tendered, even though the Clerk of Court did not receive it until July 14. Cooper v. Brookshire, 70 F.3d 377 (5th Cir. 1995).

---

[2] An example of a decision form with the step-two space can be seen in Ortego v. Forcht Wade Correctional Center, 2010 WL 2985830, *2 (W.D. La. 2010).

Plaintiff's unsworn submissions, when faced with Defendants' competent summary judgment evidence, do not create a genuine issue as to whether he actually filed a step-two grievance. That is because "[u]nsworn pleadings, memoranda or the like are not, of course, competent summary judgment evidence." Larry v. White, 929 F.2d 206, 211 n. 12 (5th Cir.1991). Even if it is accepted that Plaintiff did make such a step-two filing, his own materials show that the step-two document was not created until after the five-day deadline to file it, and the judicial complaint was filed before the earliest possible deadline for the Secretary to respond. The untimeliness supports the exhaustion defense under Woodford, and the prematurity of the suit warrants dismissal under Wendell v. Asher, 162 F.3d 887 (5th Cir. 1999) (unexhausted claim must be dismissed even though exhausted days after suit was filed). Defendants are entitled to summary judgment without reaching the merits of the claims, so Plaintiff's competing motion must be denied.

The next question is whether the claim should be dismissed with or without prejudice to refiling in forma pauperis. The undersigned has explained at length in cases such as Fitch v. LA Dept of Public Safety & Corrections, 2009 WL 1076749, *3 (W.D. La. 2009) that the filing of unexhausted suits post-Jones places more burden than before on the taxpayers who fund state institutions and the federal courts. The court may no longer dismiss the unexhausted complaints prior to service by the Marshal and, at a minimum, motion practice such as this offered by the taxpayer-funded attorneys for the prison officials. These burdens make it more important now than ever to discourage the premature filing of unexhausted prisoner complaints, and dismissal with prejudice to another IFP filing serves that interest

and will encourage prisoners to obey Congress's mandate to exhaust administrative remedies before suit is filed.

Accordingly,

**IT IS RECOMMENDED** that the Plaintiff's **Motion for Summary Judgment (Doc. 78)** be **denied**.

**IT IS FURTHER RECOMMENDED** that Defendants' **Motion for Summary Judgment (Doc. 82)** be **granted** and that Plaintiff's complaint be **dismissed with prejudice** to refiling it in forma pauperis.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within seven (7) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 10th day of November, 2011.

MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE